**FILED**

**August 31, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.B.-1**

**No. 22-0077** (Kanawha County 20-JA-74)

**MEMORANDUM DECISION**

Petitioner Father A.B.-2, by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's December 29, 2021, order terminating his parental rights to A.B.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Catherine Bond Wallace, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and in terminating his parental rights instead of employing a less restrictive alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2020, the DHHR filed a child abuse and neglect petition alleging that the mother reported that petitioner was not involved in caring for A.B.-1. The DHHR also asserted that petitioner had abandoned A.B.-1. In the petition, petitioner's address was listed as unknown and, as such, he was not served with this petition until August of 2020. The circuit court held a preliminary hearing in November of 2020 in which petitioner did not attend but counsel appeared on his behalf.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as A.B.-1 and A.B.-2, respectively, throughout the memorandum decision.

1

The DHHR filed a second amended petition in September of 2020 alleging that petitioner stated that he had daily contact with A.B.-1, was involved with the child, and cared for the child while the mother was working.[2] According to the second amended petition, petitioner stated he had been living with the mother's aunt and uncle and acknowledged he was no longer in a relationship with the child's mother. The DHHR alleged that the mother tested positive for methamphetamine and the child was removed from her custody. According to the DHHR, because the child "was reported to be small for his age and in need of a dentist," a referral was made for the child to participate in Birth to Three services. As a result, the DHHR alleged that A.B.-1 was a neglected child and that he was threatened by a "refusal, failure or inability of the [petitioner] to supply the [child] with necessary food, clothing, shelter, supervision, medical care or education."[3]

In August of 2021, the circuit court held an adjudicatory hearing during which petitioner testified he had been incarcerated since December of 2020 after violating parole to visit his father in Ohio. Petitioner noted that he was serving parole after a prior felony conviction of breaking and entering. According to petitioner, he had been in and out of jail for a variety of reasons over the years, including when his bond was revoked during his criminal proceedings after missing hearings. Petitioner testified that he was involved in the care of A.B.-1 prior to the mother ending their relationship but admitted that he saw the child more infrequently after the mother entered into a relationship with her new boyfriend, J.B. Specifically, petitioner stated that after the first six months of the child's life, he did not assist in the care of the child on a regular basis, but would visit the child. Petitioner acknowledged that he had been incarcerated for the prior ten to eleven months but argued he was scheduled to be released in February of 2022. Petitioner further claimed to provide the child's mother with diapers and money, though he acknowledged that he was not always able to interact with the child directly.

Next, the DHHR presented evidence that petitioner failed to provide A.B.-1 with food, clothing, shelter, and was unable to provide for his daily needs. A Child Protective Services ("CPS") worker testified that petitioner did not have adequate housing at the time of the petition's filing. The worker stated that petitioner was living with the mother's aunt and uncle in a "deplorable living situation." According to the worker, she visited the home and noted that the house had been raided by local police departments on multiple occasions "because of drug dealing in that house" and that there were prior CPS investigations involving other children who resided in the home. The worker further explained that the house was extremely cluttered with excess trash throughout the residence. Additionally, she stated that the condition of the house was especially concerning because petitioner would visit with the child inside the home. The worker stated that she warned petitioner about the conditions inside the house, but petitioner maintained that he lacked other housing.

---

[2]It is unclear from the record whether a first amended petition was properly filed or whether it involved petitioner, as it is not included in the record on appeal or mentioned in the parties' briefs.

[3]The DHHR later filed additional amendments to the petition that are not relevant to the resolution of petitioner's appeal.

The worker went on to explain that A.B.-1 had been placed in foster care in August of 2020 and petitioner had been unable or unwilling to provide care for the child since that time. The worker indicated that petitioner had no involvement with the child whatsoever from August of 2020 until his arrest on outstanding warrants in late December of 2020. According to the worker, she spoke with petitioner when he was served with the initial petition in August of 2020, at which time she pleaded with petitioner to participate in services and to stay in contact with his counsel and CPS workers. However, the worker noted that there were four court hearings in the proceedings from August of 2020 until late December of 2020, and petitioner failed to appear for all four hearings. The worker further explained that petitioner failed to contact CPS workers, the circuit court, and made no effort to inquire about the child. Indeed, petitioner had no contact with the child from when he was served with the petition in August of 2020 until the adjudicatory hearing in August of 2021—a one year period. Based on the evidence, the court adjudicated the child as a neglected child and found that petitioner "failed to provide the necessities of life for his child such as food, clothing, and shelter." The court found that petitioner was "more concerned about his outstanding warrants than the welfare of his child." The court also noted that petitioner "made no meaningful efforts or no efforts at all to inquire of his son," that he had abandoned the child, and adjudicated him as an abusing and neglecting parent.

The circuit court held a dispositional hearing in December of 2021 during which the DHHR attempted to proffer that petitioner had prior CPS referrals. After petitioner's counsel objected to the proffer, the written reports of referrals were entered into the record. Petitioner also noted for the record that a home study ordered by the circuit court for his mother's home in Ohio had not yet begun and noted an objection to the delay. A CPS worker then testified that the DHHR recommended that petitioner's parental rights be terminated. The worker noted that petitioner had failed to participate in the proceedings for several months as he attempted to avoid outstanding warrants and that the termination of his parental rights was the least restrictive alternative and would create permanency for the child. According to the witness, petitioner acknowledged that he lacked his own housing and was living in inappropriate housing with relatives of the child's mother. The worker detailed that the child had medical, emotional, and behavioral issues that had to be corrected upon his removal from the parents' care. Importantly, the worker explained that the four-year-old child does not even recognize petitioner as his father, instead recognizing J.B.— the mother's most recent partner—as his father. Next, petitioner testified that he was incarcerated but noted that the child could be placed with the paternal grandmother until petitioner's release from incarceration. Petitioner acknowledged that his release date was uncertain at that moment.

Ultimately, the circuit court found that petitioner had notice of all proceedings in the matter and had been represented by competent counsel at all times. The court found that petitioner "declined active efforts of the [DHHR] to incur his participation in these proceedings and/or remedial and reunification services that could have been afforded upon his participation before incarceration." The court further found that the DHHR could not offer any additional services to correct the conditions of abuse and neglect and that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. As such, it terminated petitioner's parental rights. It is from the December 29, 2021, dispositional order that petitioner appeals.[4]

---

[4]The mother's parental rights were also terminated below. According to the respondents, the permanency plan for the child is adoption in his current foster placement.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, the Court finds no error in the proceedings below.

Petitioner's first assignment of error is that his adjudication was erroneous because the DHHR failed to meet the applicable burden of proof.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted).

West Virginia Code § 49-1-201 defines a "neglected child" as a child

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

4

West Virginia Code § 49-1-201 defines an "abusing parent" as "a parent, guardian or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect."

Here, the overwhelming evidence supports the circuit court's adjudication of petitioner as an abusing parent.[5] At the time of the initial petition, petitioner's whereabouts were unknown, and his address was not available. At a later hearing, petitioner acknowledged he had been in and out of jail for a variety of reasons over the years. A CPS worker also testified at the adjudicatory hearing that petitioner failed to maintain independent housing prior to and throughout the proceedings and demonstrated that petitioner was not consistently involved in caring for the child on a daily basis. The circuit court heard petitioner's testimony, considered the CPS worker's testimony, and assessed their weight accordingly. On appeal, we decline to disturb the court's credibility determination with regard to these testimonies. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Further, the DHHR presented testimony at the adjudicatory hearing that petitioner had no contact with the child from the time he was served with the abuse and neglect petition in August of 2020 until his incarceration in late December of 2020, a period in excess of four months. After his arrest in December of 2020, petitioner remained incarcerated through the remainder of the proceedings. Prior to his incarceration during the proceedings, petitioner failed to provide the child with proper financial support and did not contact the DHHR or the circuit court with regard to the child or visitation. Further, petitioner missed four court hearings between August of 2020 and December of 2020. Despite petitioner's self-serving testimony that he allegedly provided for the child for several years prior to being served with the petition, he failed to do so at critical points in the proceedings below despite being informed that the child was placed in foster care. Indeed, after being told that his child was placed in foster care in August of 2020, petitioner did not have any contact with the child for nearly a year by the time of the adjudicatory hearing in August of 2021. Petitioner argues that he did not need to provide for the child, or, at a minimum, that his complete inaction during these proceedings did not constitute abandonment of the child because the DHHR was attempting to reunify the child with the mother. However, rather than absolving petitioner of his responsibility to provide the child with support, the attempted placement with the mother was also a byproduct of petitioner's neglect and his own criminal proceedings. Simply put, the DHHR could not have attempted to place the child with petitioner because he failed to remain in contact with CPS and his whereabouts were unknown for most of the proceedings until his arrest on outstanding warrants in late December of 2020.

Finally, petitioner's focus on the time period between being served with the petition in August of 2020 until his incarceration in December of 2020 as the sole basis for the circuit court's

---

[5]In support of his argument, petitioner asserts that the circuit court erred in adjudicating him on the basis of abandonment pursuant to West Virginia Code § 49-1-201. Because we find that the circuit court properly adjudicated petitioner of neglect based upon his failure to provide for the child, we need not address whether the circuit court erred in adjudicating petitioner based upon abandonment.

finding of neglect misrepresents the record. As previously noted, the DHHR presented evidence at the adjudicatory hearing that petitioner failed to maintain independent housing prior to and throughout the proceedings and demonstrated that petitioner was not consistently involved in caring for the child on a daily basis. Indeed, a CPS worker testified that petitioner was residing in a "deplorable living situation" in a house that had been raided by the local law enforcement on multiple occasions for drug activities and that there were prior CPS investigations involving other children who resided in the home. The CPS worker also indicated that the home was extremely cluttered with excess trash strewn throughout the residence. Petitioner also acknowledged that he had been incarcerated for varying lengths of time prior to the petitions, and that he was incarcerated at the time of the adjudicatory hearing with an uncertain release date. Indeed, had petitioner not been eventually arrested and incarcerated in December of 2020, it is unclear whether or when he would have ever returned to care for the child. Considering all of this evidence, it is clear that the circuit court's finding that petitioner failed to provide the necessities of life for his child such as food, clothing, and shelter and was unable to meet the child's daily needs is fully supported by the record. As such, the circuit court did not err in adjudicating petitioner as an abusing and neglecting parent.

Next, petitioner argues that the circuit court erred in terminating his parental rights instead of placing the child in guardianship with the paternal grandmother as the least restrictive alternative. According to petitioner, termination was not in the child's best interests, and the court should have implemented a less restrictive alternative disposition pursuant to West Virginia Code § 49-4-604(c)(5), which allows for a child to be temporarily committed to the care, custody, and control of a guardian. Petitioner claims that the grandmother could provide a suitable home, despite the guardian ad litem's designation of her home as unsuitable. Petitioner further asserts that there was a reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination was not necessary for the child's welfare. We disagree.

Petitioner correctly cites West Virginia Code § 49-4-604(c)(6) and further cites West Virginia Code § 49-4-604(d), which provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help." Petitioner further acknowledges the following holding:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4.

As previously noted, the DHHR presented testimony that petitioner had no contact with the child from the time he was served with the abuse and neglect petition until his incarceration, a period in excess of four months. During that time, he never provided the child with any financial

support, and did not contact the DHHR with regard to the child or visitation. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Despite petitioner's testimony that he provided for the child for several years prior to the proceedings, he failed to do so at critical points in the proceedings while the child was in foster care and after being adjudicated as an abusing parent. In short, he completely failed to respond to the DHHR's reasonable efforts to reunify the family, and as such, petitioner cannot dispute the circuit court's finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future. *See* W. Va. Code § 49-4-604(d)(3).

Further, petitioner's reliance on West Virginia Code § 49-4-604(c)(5) is misplaced as he fails to recognize that this disposition is expressly meant to be temporary. *See In re I.A.*, 19-0152, 2019 WL 2451150, at *3 (W. Va. Jun. 12, 2019)(memorandum decision) ("What petitioner fails to recognize is that this dispositional alternative [under West Virginia Code § 49-4-604(c)(5)] provides only for a temporary placement for the child[.]"). Here, the child is just four years old and deserves permanency. As such, the record supports a finding that termination of petitioner's parental rights was necessary for the child's welfare.

Finally, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights without the imposition of a less restrictive alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 29, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn